IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-02-0589 |
| | § | |
| OSCAR HUMBERTO GARCIA-MEJIA | § | (Civil Action No. H-06-0403) |
| | § | |

## MEMORANDUM AND ORDER

The defendant, Oscar Humberto Garcia-Mejia, has filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. (Crim. Doc. #52). That motion is accompanied by a supporting memorandum and exhibits. (Crim. Doc. #54). The government has filed a response along with a motion to dismiss or, in the alternative, a motion for summary judgment. (Crim. Doc. #56, #57).[1] Garcia-Mejia has filed a lengthy reply. (Crim. Doc. #59). The Court has carefully reviewed all pertinent matters in this criminal case. Based on this review, the Court's clear recollection of the relevant proceedings, and the application of governing legal authorities, the Court **denies** the defendant's § 2255 motion and **dismisses** this action for the reasons set forth below.

## I.     BACKGROUND

Garcia-Mejia, a native and citizen of Mexico, came to the attention of immigration officials on April 13, 2000, by way of the Institutional Removal Program operated at the

---

[1]     The Clerk's Office has docketed identical copies of the government's answer and motion to dismiss or alternative motion for summary judgment. (Crim. Doc. #56, #57).

Texas Department of Criminal Justice in Huntsville,[2] where Garcia-Mejia was serving a prison sentence for burglary of a habitation.  At that time, Garcia-Mejia admitted that he had been deported from the United States previously in 1997, because of an aggravated felony conviction, and that he had re-entered the country without obtaining permission from the United States Attorney General.[3]

Upon his release from prison in July of 2002, Garcia-Mejia was taken into custody of immigration officials, who confirmed that he had not obtained the requisite permission to re-enter the United States following his deportation for an aggravated felony.  On September 4, 2002, a federal grand jury in this district returned a one-count indictment against Garcia-Mejia, charging him with violating 8 U.S.C. § 1326(a) and (b)(2) by re-entering the United States illegally following his previous removal for the conviction of an aggravated felony. Garcia-Mejia pled guilty to those charges on October 29, 2002, without the benefit of a written plea agreement.

The Probation Office prepared a pre-sentence report (a "PSR") for purposes of

---

[2]     The Institutional Removal Program was established pursuant to a Congressional mandate "to identify and track deportable criminal aliens while they are still in the criminal justice system, and to complete removal proceedings against them as promptly as possible." *Demore v. Kim*, 538 U.S. 510, 530 n.13 (2003) (citing the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, §§ 432, 438(a), 110 Stat. 1273-1276; and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, §§ 326, 329, 110 Stat. 3009-630 to 3009-631 (codified at 8 U.S.C. § 1228)).

[3]     Garcia-Mejia was convicted in 1993 of burglary of a habitation and sentenced to ten years of imprisonment.  He was released to parole in 1997, and promptly deported because of that conviction.  Garcia-Mejia subsequently returned to the United States, committed a new offense, and was returned to state custody, where he attracted the attention of immigration officials once again.

determining punishment under the then-mandatory United States Sentencing Guidelines. The Probation Office determined that Garcia-Mejia's base offense level of 8 was subject to enhancement by 16 levels because of his prior felony conviction for burglary of a habitation, which is considered an aggravated felony for immigration purposes and a crime of violence under the sentencing provisions for illegal re-entry,[4] giving him a total offense level score of 24. With a 3-level reduction for acceptance of responsibility, his total offense score was discounted to 21. Garcia-Mejia's lengthy criminal history placed him in Category VI, meaning that he faced a potential sentence of imprisonment of 77 to 96 months under the applicable Sentencing Guidelines range. In a sealed judgment entered on October 30, 2003, the Court sentenced Garcia-Mejia at the lowest end of the Guidelines range to serve 77 months in prison, followed by a 3-year term of supervised release.

On direct appeal, Garcia-Mejia raised two issues: (1) whether this Court erred by prohibiting him from possessing "a firearm, destructive device, or any other dangerous weapon" while on supervised release; and (2) that the "felony" and "aggravated felony" definitions for the offense of illegal re-entry resulted in an unconstitutional sentence under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The Fifth Circuit rejected both arguments, affirming the conviction and sentence. *See United States v. Garcia-Mejia*, 394 F.3d 396 (5th

---

[4]    *See United States v. Guardardo*, 40 F.3d 102 (5th Cir. 1994) (holding that a Texas conviction for burglary of a habitation is a "crime of violence" within the meaning of the sentence enhancement for illegal reentry into the United States following deportation); *see also* U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(b)(1)(A) & cmt. n.1. (2002) (including "burglary of a dwelling" as among those offenses fitting within the definition of a "crime of violence").

Cir. 2004) (per curiam).  On further review, Garcia-Mejia argued that he was entitled to resentencing because the Sentencing Guidelines were unconstitutional.  The Supreme Court granted a writ of certiorari, vacated the judgment, and remanded the case to the Fifth Circuit for reconsideration in light of the decision in *United States v. Booker*, 543 U.S. 220 (2005), which struck down the mandatory component of the Sentencing Guidelines.  The Fifth Circuit found no prejudice or plain error and affirmed the sentence in an unpublished opinion.  *See United States v. Garcia-Mejia*, 145 Fed. App'x 954, 2005 WL 2008166 (5th Cir. Aug. 22, 2005), *cert. denied*, 126 S. Ct. 1897 (2006).

Garcia-Mejia now seeks relief from his sentence under 28 U.S.C. § 2255.  Liberally construed, Garcia-Mejia contends that he is entitled to relief under § 2255 for the following reasons: (1) the prosecutor engaged in misconduct by refusing to file a motion for a reduction in sentence based on substantial assistance; and (2) he was denied effective assistance of counsel at his sentencing and direct appeal.  The government has filed a response and moves for a summary dismissal of the claims.  For reasons discussed below under the governing standard of review, the Court concludes that Garcia-Mejia is not entitled to relief under 28 U.S.C. § 2255.

## II.   <u>STANDARD OF REVIEW</u>

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a criminal defendant "must clear a significantly higher hurdle" than the standard that would exist on direct appeal.  *United States v. Frady*, 456 U.S. 152, 166 (1982).  When a defendant has been convicted and his conviction has been upheld on direct appeal, there is a presumption that the conviction

4

is fair and final.  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).  "As a result, review of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice."  *Id.*  Of course, this procedural bar does not apply to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel.  *See Massaro v. United States*, 538 U.S. 500 (2003) (holding that ineffective assistance claims are properly raised on collateral review and not procedurally barred by a failure to raise them on direct appeal).

The defendant proceeds *pro se* in this matter.  *Pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them.  *See Haines v. Kerner*, 404 U.S. 519 (1972).  At the same time, however, *pro se* litigants are still required to provide sufficient facts in support of their claims.  *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).  Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."  *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

## III.    DISCUSSION

5

A.      **Garcia-Mejia's Guilty Plea**

Before addressing the challenges raised by Garcia-Mejia, the Court pauses to consider the effect of his guilty plea. "A guilty plea 'is more than a confession which admits that the accused did various acts.'"   *United States v. Broce*, 488 U.S. 563, 570 (1989) (quoting *Boykin v. Alabama*, 395 U.S. 238 (1969)). "It is an 'admission that he committed the crime charged against him.'" *Id.* (quoting *North Carolina v. Alford*, 400 U.S. 25, 32 (1970)). "By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of the substantive crime." *Id.*

As a general rule, "[a] voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). It is well established that criminal defendants have only a limited ability to challenge a conviction entered pursuant to a valid guilty plea:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759, 770 (1970)].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Thus, a voluntary guilty plea waives all non-jurisdictional defects in the proceedings against the defendant, including those claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary. *See United States v. Glinsey*, 200 F.3d 386, 392 (5th

Cir. 2000).

The Court has carefully considered the § 2255 motion filed by Garcia-Mejia, along with its lengthy memorandum and numerous exhibits.  (Crim. Doc. #52, #54).  None of the claims raised by Garcia-Mejia call into question the validity or the voluntariness of his decision to plead guilty.  Instead, his claims concern the 77-month prison sentence that he received in this case.  Garcia-Mejia's claims are reviewed below, beginning with his allegation of prosecutorial misconduct.

**B.      Prosecutorial Misconduct**

Garcia-Mejia, who professes to have been a high-ranking member (a "General") of a notorious prison gang (the "Partidos Revolucionario Mexicanos" or "PRM," formerly known as "Estamos Unidos Mexicanos"), insists that he has been of substantial assistance to the government by providing information about the gang's organization, culture, membership, and activities.  Garcia-Mejia maintains that this intelligence has helped state and federal prison officials as well as other law enforcement agencies to "deter" criminal activities by PRM gang members.  Garcia-Mejia accuses the Assistant United States Attorney (the "AUSA"), Howard Rose, of engaging in misconduct in this case by refusing to file a motion for a downward departure under § 5K1.1 of the Sentencing Guidelines or a post-judgment motion for a reduction in sentence under Rule 35 of the Federal Rules of Criminal Procedure to reward his substantial assistance to authorities.

Because Garcia-Mejia did not raise his prosecutorial-misconduct claim on direct appeal, the government argues that review of this claim is barred by the doctrine of

procedural default.   Alternatively, the government argues that Garcia-Mejia's claim is without merit because his allegations do not articulate a cognizable issue.   These arguments are addressed in turn.

### 1.   Procedural Default

Garcia-Mejia concedes that he did not raise a claim for prosecutorial misconduct during his appellate proceedings.   Under the doctrine of procedural default, a § 2255 movant who fails to raise a constitutional or jurisdictional issue on direct appeal waives the issue for purposes of collateral review.   *See United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000) (citing *United States v. Patten*, 40 F.3d 774, 776-77 (5th Cir. 1994) (per curiam); *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992); *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A 1981)).   When a defendant has procedurally defaulted a challenge by failing to raise error properly on direct appeal, the claim may be raised in a § 2255 motion only if the defendant can first demonstrate (1) cause and prejudice, or (2) that he is "actually innocent" of the crime for which he was convicted.   *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

Garcia-Mejia, who pled guilty in this case, does not allege that he is actually innocent. Likewise, Garcia-Mejia does not satisfy the cause-and-actual-prejudice exception to excuse his failure to raise his prosecutorial-misconduct claim properly during his direct appeal.   In that regard, even if the Court were to assume that cause exists to excuse the procedural

default in this instance,[5] Garcia-Mejia does not demonstrate that he will suffer actual prejudice because, for reasons set out briefly below, he fails to establish a meritorious claim of prosecutorial misconduct in connection with the AUSA's refusal to file a motion for a reduced sentence based on substantial assistance.

### 2.   Garcia-Mejia Fails to State a Cognizable Claim

The heart of Garcia-Mejia's claim for prosecutorial misconduct is that the AUSA refused to file a motion to reduce his sentence for substantial assistance under § 5K1.1 of the Sentencing Guidelines or under Rule 35(b) of the Federal Rules of Criminal Procedure. Section 5K1.1 of the Sentencing Guidelines provides that, "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." U.S. SENTENCING GUIDELINES MANUAL § 5K1.1.  Likewise, the government may file a motion under Rule 35(b) to reduce the defendant's sentence if, after sentencing, he has provided "substantial assistance in investigating or prosecuting another person[.]" FED. R. CRIM. P. 35(b).

At the sentencing hearing, the AUSA explained that the government did not plan to file a motion for a downward departure based on substantial assistance because, although

---

[5]   Ineffective assistance of counsel can constitute cause for a procedural default under certain circumstances.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  "Not just any deficiency will do, however; the assistance must have been so ineffective as to violate the Federal Constitution."  *Id.*  In this case, Garcia-Mejia fails to demonstrate that he was denied effective assistance of counsel at his sentencing or on appeal for reasons discussed below.

Garcia-Mejia had attempted to cooperate, the information that he provided consisted only of "remote [gang] intelligence" that was not particularly helpful.  (Sent. Tr. at 14).  The AUSA elaborated that the information provided by Garcia-Mejia about his fellow gang associates and their activities was, at best, of a "secondhand" variety, which was "not evidence," but merely "intelligence."  (Sent. Tr. at 19).  Garcia-Mejia insists that the intelligence he provided was not "remote," and he presents numerous letters and documents in support of his argument that he provided substantial assistance to government authorities both before and after sentencing.[6]  Garcia-Mejia's allegations are not sufficient to state a cognizable claim for prosecutorial misconduct in this context.

Whether to file a motion for a sentence reduction based on substantial assistance is a matter vested completely within the government's discretion.[7]  *See United States v. Aderholt*, 87 F.3d 740, 742 (5th Cir. 1996).  A court has authority to review a prosecutor's refusal to file a substantial-assistance motion only if the defendant makes a "substantial threshold showing" that the refusal was based on an unconstitutional motive, such as the defendant's race or religion.  *Wade v. United States*, 504 U.S. 181, 185-86 (1992); *United*

---

[6]     It should be noted that these exhibits consist mainly of correspondence by Garcia-Mejia and his friends or associates, including other reported gang members, as well as letters from Garcia-Mejia's counsel, an investigator from the Federal Public Defender's Office, and other officials in response to his many requests for a reduction in sentence.  (Doc. #54, #59).

[7]     There was no plea agreement in this case.  Although the government may bargain away its discretion concerning whether to file a motion for a downward departure based on a defendant's substantial assistance, it did not do so here.  *See United States v. Aderholt*, 87 F.3d 740, 742 (5th Cir. 1996) (finding no breach of a plea agreement wherein the government had expressly retained its sole discretion to seek a departure under 5K1.1 or Rule 35(b) if deemed appropriate).

*States v. Urbani*, 967 F.2d 106, 110-11 (5th Cir. 1992).  Because Garcia-Mejia does not allege or show that there was any unconstitutional motive behind the prosecutor's decision to refuse to move for a reduction in sentence, and the record does not disclose any, Garcia-Mejia's claim is not cognizable.  Accordingly, not only is this claim procedurally barred, Garcia-Mejia is not entitled to relief on the merits of this issue under 28 U.S.C. § 2255.

### C.    Ineffective Assistance of Counsel - Sentencing

Garcia-Mejia complains that his appointed attorney, Assistant Federal Public Defender Margaret Ling, provided ineffective assistance of counsel at his sentencing proceeding.  In particular, Garcia-Mejia faults his counsel for failing to do the following: (1) to introduce "mitigating evidence" at the sentencing hearing; (2) to move for a downward departure based on cultural assimilation; and (3) to file a motion after the sentencing to reduce his sentence under Rule 35 of the Federal Rules of Criminal Procedure based on his substantial assistance to the government.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the effective assistance of counsel. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  Claims for ineffective assistance of counsel are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency.  *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process

11

that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness. *See United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005) (citing *Strickland*, 466 U.S. at 687-88). Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Molina-Uribe*, 429 F.3d at 518 (quoting *Strickland*, 466 U.S. at 689). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. To prove prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Harris*, 408 F.3d 186, 189 (5th Cir. 2005) (quoting *Strickland*, 466 U.S. at 694). Garcia-Mejia's claims of ineffective-assistance in connection with his sentencing proceeding are addressed separately below.

### 1.     Mitigating Evidence

Garcia-Mejia contends that his counsel failed to introduce certain items of "mitigating evidence" at the sentencing hearing. Garcia-Mejia references a number of hand-written letters containing information about the PRM prison gang and the activities of its members, as well as Garcia-Mejia's efforts to assist law enforcement by providing intelligence related to the PRM, which he claims that his counsel failed to tender at the sentencing hearing.

12

Garcia-Mejia insists that these letters were "crucial to the outcome of [his] case" because they detail his efforts to cooperate with law enforcement by providing substantial assistance. (Crim. Doc. #54, *Memorandum* at 9-18).

Ling has presented an affidavit in which she explains that she did not present letters at the sentencing hearing because Garcia-Mejia had informed her prior to that proceeding that he had personally sent the letters to the district court and to counsel for the government. (Crim. Doc. #57, *Government's Motion*, Exhibit 1, *Affidavit of Margaret Ling*). The transcript confirms that the Court received "numerous letters" from Garcia-Mejia and read them before the sentencing hearing, where they were made part of the record. (Sent. Tr. at 4-5). Because the Court already had copies of Garcia-Mejia's letters, counsel was not deficient for failing to provide them at the hearing.

Even assuming that counsel was deficient for failing to present the letters, Garcia-Mejia fails to show that he suffered actual prejudice as a result. Garcia-Mejia maintains that the letters were important because they documented his efforts to provide substantial assistance to the government in hopes of winning a downward departure under § 5K1.1. As discussed above, only the government could file a downward departure motion for substantial assistance. Standing alone, the information contained in the letters did not entitle Garcia-Mejia to a downward departure absent a motion from the government. Because the government declined to file a motion for a downward departure based on substantial assistance, Garcia-Mejia does not demonstrate that the result of his proceeding would have been different, or that the sentence imposed by the Court would have been any less than the

13

77-month term imposed had his counsel presented copies of the letters during the hearing. Thus, Garcia-Mejia does not establish a valid claim for ineffective assistance of counsel in connection with his counsel's alleged failure to submit mitigating evidence.

### 2.    Downward Departure – Cultural Assimilation

Garcia-Mejia contends that his counsel failed to move for a downward departure based on cultural assimilation.  A mitigating factor typically raised in illegal re-entry cases such as this one, a non-citizen may attempt to seek a downward departure from the sentencing court by demonstrating his cultural assimilation into American society and a lack of ties to his native land.  *See United States v. Lipman*, 133 F.3d 726, 729-31 (9th Cir. 1998). The Fifth Circuit has recognized that cultural assimilation may be a permissible basis for downward departure.  *See United States v. Rodriguez-Montelongo*, 263 F.3d 429, 433 (5th Cir. 2001).  Nevertheless, because it is not a factor mentioned in the Sentencing Guidelines as a basis to depart, reductions in sentence for cultural assimilation are appropriate only on a "highly infrequent" basis in which the defendant's case is outside of the "heartland" of the Guidelines range.  *Lipman*, 133 F.3d at 730; *see also United States v. Reyes-Nava*, 169 F.3d 278, 280 (5th Cir. 1999) (affirming the district court's decision to  reject an illegal re-entry defendant's request for a cultural-assimilation departure based on his twenty-year residence in the United States and his marriage to a United States Citizen which union had produced a United States Citizen child).  Thus, district courts have authority to depart for reasons of cultural assimilation only where "extraordinary circumstances" are present.  *Lipman*, 133 F.3d at 730; *Rodriguez-Montelongo*, 263 F.3d at 433 n.4.

14

In Garcia-Mejia's case, counsel filed a motion for downward departure based on prosecutorial delay. (Crim. Doc. #28). Specifically, she took issue with the two-year delay between the initial encounter by immigration officials in 2000, and the federal indictment for illegal re-entry, which was not lodged against Garcia-Mejia until after his release from state prison in 2002. (Sent. Tr. at 25-29). At the sentencing hearing, counsel also raised the issue of cultural assimilation as an additional ground for departure. (Sent. Tr. at 29-30). Among the facts presented in support of a departure for cultural assimilation, Garcia-Mejia's counsel argued that a reduced sentence was warranted in this instance because Garcia-Mejia had lived in the United States since the age of ten, had attended school in the United States, speaks English, and had cooperated with the police. (Sent. Tr. at 29-30).

This Court considered the arguments raised by counsel and declined to depart downward. In doing so, the Court found that the amount of delay was not egregious. Acknowledging Garcia-Mejia's lengthy criminal record, the Court noted further that much of his alleged cultural assimilation had been forged while in prison, where he had spent most of his time since the age of 18. (Sent. Tr. at 30-31, 34). In light of the argument presented at the hearing by Garcia-Mejia's counsel, however, the Court decided to sentence the defendant at the lowest end of the applicable Guidelines range although it had intended initially to sentence him at the very top of that range:

> Well, before I got the downward departure motion and before I had read the Defendant's letters, you know when I was just looking at the PSR, I had been thinking that I would go to the top of the range. But after I got the Defendant's letters I thought — and I realized the chronology actually with respect to the delay in prosecution — that softened me up.

I, basically, have concluded that contrary to my initial inclination I would go to the bottom of the range, not the top of the range, because of the things that have been brought to my attention that have been under discussion here and in the motion. But I am not inclined to downward depart.

\* \* \* \*

Now with respect to the efforts to cooperate, the circumstances are clearly very unfortunate. The Government might have been onto something with the Defendant had he remained not in custody. But the issues of cooperation are beyond the scope of this Court's ability and power to address directly through any 5K1 downward departures.

With respect to my discretion, I do choose to exercise my discretion and I will do so by sentencing the Defendant at the bottom of the range.

I can say to Mr. Garcia-Mejia that I considered the criminal history and the number of reentries and all of this stuff a big deal. And that it would have been that you would have gotten the top of the range but for your efforts to cooperate and the delay attending prosecution. But because of all these circumstances, I exercise my discretion and go to the bottom of the range.

(Sent. Tr. at 32-34).  In affirming the sentence on direct appeal, the Fifth Circuit found no prejudice or plain error in connection with the decision not to depart. *See United States v. Garcia-Mejia*, 145 Fed. App'x 954, 2005 WL 2008166 (5th Cir. Aug. 22, 2005), *cert. denied*, 126 S. Ct. 1897 (2006).  Garcia-Mejia presents no evidence showing that he has extensive ties to the United States outside of prison,[8] and nothing to demonstrate that extraordinary circumstances warrant a departure based on cultural assimilation.  In light of his extensive criminal record, which includes serious offenses committed following multiple illegal entries into the United States, Garcia-Mejia otherwise fails to demonstrate that he

---

[8]     Indeed, Garcia-Mejia's own evidence suggests that his biggest accomplishment in the area of cultural assimilation has been his rise to the top-ranking membership of the PRM prison gang.

16

merited a sentence lower than the 77-month term that he received.  Thus, even assuming that counsel was somehow deficient for failing to raise the issue of cultural assimilation with more force as an adequate basis for downward departure, Garcia-Mejia does not demonstrate that he was actually prejudiced as a result because he does not show that such a departure was justified under the circumstances.

### 3.    Substantial Assistance

Garcia-Mejia contends that his counsel failed to file a motion after the sentencing to reduce his sentence under Rule 35 of the Federal Rules of Criminal Procedure based on his substantial assistance to the government.  This claim is without merit.  As referenced above, motions for a reduction in sentence for substantial assistance are within the discretion of the government alone.  *See Aderholt*, 87 F.3d at 742.  Because his counsel could not file a Rule 35 motion on her client's behalf, Garcia-Mejia fails to show deficient performance or actual prejudice with respect to this issue.

In summary, Garcia-Mejia has failed to demonstrate that his counsel was deficient in connection with his sentencing proceeding; nor has he demonstrated any actual prejudice.  Garcia-Mejia has not established a valid claim for ineffective assistance of counsel at his sentencing.  Accordingly, he is not entitled to relief under 28 U.S.C. § 2255 on this issue.

### D.    Ineffective Assistance of Counsel - Appeal

Garcia-Mejia also complains that his appointed appellate attorney, Assistant Federal Public Defender Molly Odom, provided ineffective assistance of counsel during his direct appeal.  Criminal defendants have a constitutional right to effective assistance of counsel in

their first direct appeal.  *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000).  A claim of ineffective assistance on appeal is governed by the test set out in *Strickland v. Washington*, referenced above, which requires the defendant to establish both constitutionally deficient performance and actual prejudice. *See Smith v. Murray*, 477 U.S. 527, 535-36 (1986) (applying *Strickland* to a claim of ineffective assistance of counsel on appeal).  To establish that appellate counsel's performance was deficient in the context of an appeal, the defendant must show that his attorney was objectively unreasonable in failing to find arguable issues to appeal — that is, that counsel unreasonably failed to discover non-frivolous issues and raise them.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

Garcia-Mejia faults his appellate counsel for failing to present his claim of prosecutorial misconduct and for failing to raise claims of ineffective assistance of counsel at his sentencing.  In general, claims of ineffective assistance will not be considered on direct appeal when the claims were not raised in the district court because there has been no opportunity to develop record evidence on the merits of the claim.  *See United States v. Lampazianie*, 251 F.3d 519, 527 (5th Cir. 2001).  Moreover, this Court has considered Garcia-Mejia's proposed claims for ineffective assistance of counsel and for prosecutorial misconduct and has found them to be without merit.

The right to counsel on appeal "does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal." *Robbins*, 528 U.S. at 278.  Appellate counsel is not deficient for not raising every

18

non-frivolous issue on appeal. *United States v. Reinhart*, 357 F.3d 521, 524 (5th Cir. 2004) (citing *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 2000)).  To the contrary, counsel's failure to raise an issue on appeal will be considered deficient performance only when that decision "fall[s] below an objective standard of reasonableness." *Id*. This standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Id*. "Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Id.*

Garcia-Mejia has not demonstrated that he had any other valid issues to raise on appeal or that, but for his counsel's failure to include a particular issue in his appellate brief, the result of his appeal would have been different.  In the absence of a valid claim, Garcia-Mejia fails to demonstrate that he received ineffective assistance of counsel in connection with his appeal.  Accordingly, Garcia-Mejia is not entitled to relief under § 2255 on this issue.

## IV.   EVIDENTIARY HEARING

In his response to the government's dispositive motion, Garcia-Mejia requests an evidentiary hearing.  (Crim. Doc. #59).  A motion brought under 28 U.S.C. § 2255 may be denied without a hearing if the motion, the files, and the records of the case conclusively show that the prisoner is entitled to no relief.  *See United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam) (citing *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980)).  In this case, the record is adequate to dispose fairly of the allegations made by the defendant.  A district court need inquire no further on collateral review.  Therefore, the

19

defendant's request for an evidentiary hearing is denied.

## V.   **CERTIFICATE OF APPEALABILITY**

The defendant's § 2255 motion is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, codified as amended at 28 U.S.C. § 2253.  Thus, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'"  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the

petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After carefully considering the entire record of this criminal proceeding, the Court concludes that jurists of reason would not debate whether the movant has stated a valid claim or whether any procedural ruling in this case was correct.  Accordingly, a certificate of appealability will not issue.

## VI.   CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.   The government's motion to dismiss and alternative motion for summary judgment (Crim. Doc. #56, #57) is **GRANTED**.

2.   The defendant's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Crim. Doc. #52) is **DENIED** and the corresponding civil action (H-06-0403) is **DISMISSED** with prejudice.

3.   A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties and will file a copy of this order in the corresponding civil case (Civil Action No. H-06-0403).

SIGNED at Houston, Texas, on **August 31, 2006.**

Nancy F. Atlas
United States District Judge